IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEVEN RAY THOMAS,
Plaintiff,

vs.

LOUIS E. BRUCE, et al.,
Defendants.

Case No. 04-3274-JTM

**MEMORANDUM AND ORDER**

This matter comes before the court on the defendants' Motion for Summary Judgment (Dkt. No 82). Defendants argue that plaintiff received sufficient medical treatment for defendants to overcome plaintiff's Eighth Amendment claim. Plaintiff filed an untimely response, which the court did not consider. D. Kan. R. 7.4 (noting that where a respondent fails to file a response within the time specified, the court may consider the motion uncontested and ordinarily will be granted without further notice).

At the outset, the court notes that defendants' motion fails to comply with federal and local rules. Defendants' counsel fails to list and number the facts on which defendants relied. D. Kan. 56.1(a). Additionally, defendants' motion lacks substantive legal analysis of the claim presented. In the interest of judicial expediency, the court sua sponte grants summary judgment for the reason set forth herein. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); DiCesare v. Stuart, 12 F.3d 973, 976 n. 1 (10th Cir. 1993) (noting that a district court may grant summary

judgment sua sponte provided that the losing party is given sufficient notice and an opportunity to come forward with evidence in opposition).

**I. STANDARD OF REVIEW**

The standard is somewhat modified in an unopposed motion for summary judgment. As this court has noted, "it is improper to grant a motion for a summary judgment simply because it is unopposed." E.E.O.C. v. Lady Baltimore Foods, Inc., 643 F. Supp. 406, 407 (D. Kan. 1986) (citing Hibernia National Bank v. Administracion Central Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir.1985)). This will be the case where the movant fails to make out a prima facie case for summary judgment. In re Independent Clearing House Co., 77 B.R. 843, 877 n. 52 (C.D. Utah 1987) (citing United States v. Crooksville Coal Co., 560 F.Supp. 141, 142 (S.D. Ohio 1982). See also Fed. R. Civ. P. 56(e) advisory committee's notes, 1963 amendments ("[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented."). It is the role of the court to ascertain whether the moving party has sufficient basis for judgment as a matter of law. Lady Baltimore Foods, 643 F. Supp. at 407. In so doing, the court must be certain that no undisclosed factual dispute would undermine the uncontroverted facts. Lady Baltimore Foods, 643 F.Supp. at 407.

The summary judgment standard must also be read in conjunction with D. Kan. Rule 7.4 which instructs that a "failure to file a brief or response within the time specified... shall constitute a waiver of the right thereafter to file such brief or response." Further, if a "respondent fails to file a response within the time required...the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice."

**II. PROCEDURAL HISTORY**

On August 26, 2004, plaintiff Steven Thomas, an inmate then confined at Hutchinson Correctional Facility, filed this action with the United States District Court for the District of Kansas. Plaintiff sued defendants, Neal R. Brockbank, Dennis Goff, Janet Myers, Debra Lundry, all in their association with Correct Care Solutions, Inc., Louis E. Bruce, Warden of Hutchinson Correctional Facility, Hutchinson Correctional Facility, Correct Care Solutions, Inc., State of Kansas, the Kansas Department of Corrections and Roger Werholtz, Secretary of Corrections.

U.S. District Court Judge Van Bebber originally dismissed the case under 28 U.S.C. §1915(e)(2)(B)(ii) and Rule 12(b)(6). Plaintiff appealed. In an order filed on March 18, 2005, the U.S. Court of Appeals for the Tenth Circuit reversed the dismissal and remanded the case. The Tenth Circuit noted that plaintiff, if his allegations were taken as true, had sufficiently pled a claim of an Eighth Amendment violation under 42 U.S.C. § 1983 to resist dismissal. Subsequently, the case was assigned to the undersigned.

On May 3, 2005, plaintiff filed an amended complaint seeking recovery under 42 U.S.C. § 1983 on the grounds that defendants failed to properly treat plaintiff's hepatitis infection in violation of the Eighth Amendment. Plaintiff's amended complaint named the same parties, but excluded as defendants the State of Kansas, Kansas Department of Corrections and Hutchinson Correctional Facility. Plaintiff seeks declaratory and injunctive relief. Additionally, plaintiff seeks from each defendant compensatory damages of $1,0000,000 and punitive damages of $1,000,000.

## III. FINDINGS OF FACT

Plaintiff Steven Ray Thomas is an inmate in the custody of the State of Kansas, serving a sentence for various drug offenses.

### A. Plaintiff's Medical History

The court draws its findings from the Martinez report, which summarizes the relevant parts of plaintiff's medical record and responds to plaintiff's factual allegations.

On March 24, 2003, plaintiff was admitted to the custody of the Secretary of Corrections at the El Dorado Correctional Facility and underwent the Reception and Diagnostic process. Plaintiff reported at that time he had Hepatitis B and C. Shortly thereafter on March 28, 2003, while still at the Reception and Diagnostic Unit, plaintiff's goal was established to avoid liver toxins.

Plaintiff was later transferred to the Hutchinson Correctional Facility and received an intake evaluation on May 12, 2003, indicating that he would have chronic care for Hepatitis B and C. The record indicates that his lab tests were current, but he needed to be scheduled for additional tests.

On August 2, 2003, plaintiff alleges that his hepatitis was causing weight loss and abdominal pain. On August 6, 2003, plaintiff saw a health care provider, who indicated that interferon treatment was unnecessary at that time but that plaintiff needed to continue to be monitored. Plaintiff completed additional lab work on August 22, 2003.

In his amended complaint, plaintiff alleges that on March 3, 2004, he submitted a sick

call slip but saw no one. The medical record reflects that approximately 5:10 a.m. on March 13, 2004, he was seen at the clinic for a rash on his penis and scrotum, that he wanted to seek his records from Lansing, and wanted an appointment with the health care provider or chronic care nurse. The record also reflects that approximately 8 a.m. the same day plaintiff submitted a sick call slip requesting a special diet for Hepatitis B and C and wanted to see a "real" doctor that specializes in such infections.

On March 22, 2004, plaintiff submitted a sick call form indicating he would like his liver tested to evaluate the co-enzymes in his liver. He also wanted cancer drugs used for his diagnosis. He also noted something about "violations of his 8th and 14th amendments." Plaintiff did not present himself at the clinic on this day.

Plaintiff maintains he was called to the clinic on May 12, 2004, for a blood test to determine his enzyme levels. The medical record indicates that he was at the clinic at approximately 11:45 a.m. for matters relating to an injury to his eye he received playing sports a couple of weeks earlier.

In his amended complaint, plaintiff notes that defendant Lundry responded to this complaint about hepatitis on June 10, 2004. She indicated that the hepatitis was being monitored, that enzyme levels were normal, and that neither a liver biopsy nor additional medication were needed at that time.

On June 13, 2004, plaintiff saw Dr. Brockbank and reviewed the results of plaintiff's May 12, 2004 blood draw. Plaintiff alleges that the doctor advised him that the enzyme levels were high and a liver biopsy would be ordered. However, a review of the medical record between June 7 and June 20 indicates that plaintiff's liver enzymes were elevated but that reference to the

chronic care clinic was not needed at that time. Defendant Goff ordered additional treatment on June 7, 2004. The lab test results were put in the patient's medical record of June 20, 2004.

On July 24, 2004, plaintiff saw Dr. Brockbank. Plaintiff alleges that the doctor advised him that the liver biopsy was awaiting approval from defendant Myers. However, the medical record indicates that although plaintiff saw Dr. Brockbank on July 24, 2004, about a rash and blurred vision, there was no discussion of plaintiff's hepatitis or a liver biopsy.

On August 15, 2004, plaintiff saw Dr. Brockbank. Plaintiff alleges that the doctor told him no biopsy would be performed. However, the medical record indicates that plaintiff saw the doctor about skin problems, but there was no discussion of his hepatitis. The record does reflect, however, that he had received the first of two vaccinations against Hepatitis A virus.

Plaintiff alleges that he accidentally received his lab tests on October 27, 2004. The tests reflected high enzyme levels. On October 29, 2004, plaintiff complained of loss of appetite, fatigue, joint pain and an ache in the area of his liver. Defendant Goff saw plaintiff and indicated that plaintiff's problems were caused by stress. Plaintiff alleges that he confronted Goff with the blood test results indicating a high enzyme level and that Goff became agitated and asked how plaintiff obtained his test results. However, the medical record reflects that on October 28, 2004, plaintiff submitted a sick call slip requesting a copy of his lab report and was told that he should have already received it because it was sent to him the preceding day. Ultimately, Goff indicated that because of the viral load, a liver biopsy would be ordered, subject to defendant Myers' approval. The doctor and patient agreed they would begin the work-up process on plaintiff regarding his hepatitis.

On October 15, 2004, the clinic ran additional lab tests on plaintiff. On November 1,

2004, because of test results, it was decided that a treatment program would be "worked up" for plaintiff's Hepatitis C. Plaintiff alleges he reviewed his medical record on November 3, 2004. However, plaintiff was only seen on November 4, 2004, regarding a body rash and interferon for his Hepatitis C.

The clinic received additional lab tests results on or about November 14, 2004. A decision or recommendation was made that plaintiff be considered for a liver biopsy by way of the out-patient referral request form dated November 19, 2004.

The clinic conducted additional tests on plaintiff throughout the month of December. On December 7, 2004, a liver biopsy was performed on plaintiff. Additional lab tests and examinations continued through the month but results were unremarkable.

On December 14, 2004, plaintiff was transferred to the Ellsworth Correctional Facility. On January 18, 2005, plaintiff participated in lab testing, but he later refused to participate in further testing on January 21, 2005. Plaintiff was reviewed for mental health issues that might interfere with his treatment for Hepatitis C on January 25, 2005. On January 26, 2005, plaintiff received the second of two vaccination injections against Hepatitis A infection.

On January 27, 2005, it was noted that plaintiff had a history of Hepatitis C, and he requested treatment for it. Defendants concluded that plaintiff did not qualify for Hepatitis C treatment at that time for several reasons. Plaintiff had returned to prison on new drug charges. He was noncompliant with his glaucoma medications. His lab test results did not meet the criteria for the treatment he was requesting. Additionally, plaintiff refused to complete any additional drug treatment programs, having already refused three times while housed at the Hutchinson Correctional Facility. Because of these problems, the plan was to continue to

monitor him through the chronic care process.

Plaintiff was transferred to the El Dorado Correctional Facility on February 15, 2005. On February 21, 2005, plaintiff was evaluated for his emotional stability for treatment for Hepatitis C. Plaintiff was advised that there was a possibility that he could depressed during the treatment and agreed to take antidepressants, if necessary.

On March 3, 2005, while plaintiff was at the clinic for other reasons, he inquired as to when he would begin his Hepatitis C treatments. He alleged that he had already been approved for the treatment at the Hutchinson Correctional Facility and was now ready to begin. The orders indicated that plaintiff was informed he did not meet the criteria for Hepatitis C virus treatment at that time. His blood test did not support treatment. Plaintiff also refused to comply with the drug treatment program.

On March 21, 2005 and again on March 31, 2005, plaintiff underwent lab tests.

On April 20, 2005, plaintiff reviewed his lab results of the March 31, 2005 testing. On April 30, 2005, plaintiff was seen in the chronic care clinic, and the staff outlined additional plans of treatment.

On May 23, 2005, plaintiff met with the health care provider to discuss Hepatitis C treatment. Plaintiff came in the next day for some lab work and the results were reviewed on June 1, 2005.

Plaintiff was reviewed June 10, 2005, for the compatibility of his mental health with beginning interferon treatment. Plaintiff was also reviewed similarly on June 17, 2005, and was found to be appropriate for treatment. On June 27, 2005, it was discussed that plaintiff would have to agree to a drug treatment program before starting his Hepatitis C treatment, and prior to

that, decisions would need to be made about eye surgery.

During the first part of August, at which time these records stop, plaintiff was again reviewed by the physicians and given lab tests. On or about September 8, 2005, plaintiff was transferred to the Lansing Correctional Facility, so he could undergo eye surgery at the Kansas University Medical Center.

**B. Administrative Review of Plaintiff's Grievance**

In early June 2004, plaintiff filed grievance BA00011857, alleging he was not receiving proper medical treatment. In his grievance, plaintiff complained, in relevant part, that he was not receiving the treatment he perceived as appropriate for Hepatitis B & C. He also claimed he needed a cancer fighting drug. Plaintiff further requested a liver biopsy and a copy of his "...full Medical Lab Report from 1988 to 2004." Plaintiff complained that the health care provider had failed to respond to his grievance. The court summarizes the administrative review as set forth in the affidavits below.

The director of nursing responded to the grievance on June 10, 2004. Subsequently, plaintiff's unit team, the warden, and the designee of the secretary of corrections responded.

Defendant Lundry, director of nursing, stated that plaintiff's medical condition was monitored through lab tests, that his liver enzymes were within normal limits and that he did not need a liver biopsy at that time. She also instructed plaintiff on the procedures and costs involved in his obtaining a copy of his medical record. Defendant Lundry states as follows:

> My name is Debra Lundry and I am employed by Correct Care Solutions, Inc. (CCS), as the director of nursing assigned to oversee health care services provided to inmates housed at the Hutchinson Correctional Facility in Hutchinson, Kansas, subject to oversight by my supervisor, Janet Myers. I was so employed on May 12, 2003, through this date.

> I would have routine contact with inmate Steven Thomas, DOC #41861. On approximately June 7 or June 8, 2004, I received a grievance from Mr. Thomas regarding his dental care, general complaints about our procedures and a reference to his Hepatitis C treatment. I prepared a grievance response at that time, dated June 10, 2004, and returned it to Mr. Thomas, a copy of that grievance is attached to my affidavit and is labeled "Exhibit A". I reviewed that grievance and believe the response to have still been correct.
>
> The treatment Plaintiff received for his Hepatitis C appeared to be in line with the treatment that was necessary and appropriate for his illness. Plaintiff Mr. Thomas was not refused any treatment he should have received. I was not deliberately or otherwise indifferent to any serious medical need he had, including the Hepatitis C issue.

Warden Bruce responded on July 6, 2004, to the appeal of the grievance. The health care provider administrator, Myers, indicated that plaintiff was being seen by the physician and that diagnostic tests were being run. The warden indicated that plaintiff's medical needs were being met. Defendant Bruce states as follows:

> I am the warden at the Hutchinson Correctional Facility and became so employed at this facility in August of 1999, although I have previously served at other correctional facilities in the state in most security and administrative capacities and most recently as a Deputy Secretary of Corrections, prior to coming to HCF.
>
> I do not remember anything specific about Mr. Thomas' medical situation. I find only one grievance or other correspondence filed by him which was directed to my office for investigation and response, which is Grievance BA00011857. In the matter of that grievance, I directed my designee to conduct an investigation and to prepare a response for my review along with supporting information. The response I made seemed appropriate based on the facts of which I was made aware.
>
> I was not deliberately indifferent to any serious medical need of the plaintiff and certainly would have interceded and directed further investigation be conducted if the facts disclosed by the initial investigation into the complaint warranted such action.
>
> I had no direct contact or involvement with plaintiff or with his circumstances beyond my response to his grievance.

> Any actions I took or did not take were performed within the scope of the duties of my position of employment with the State of Kansas and not in any personal or nonbusiness capacity.

Secretary of Corrections Designee William L. Cummings responded on July 22, 2004. He noted that the health care provider had reviewed plaintiff's care and treatment and that such treatment was consistent with prevailing community standards.

Secretary of the Kansas Department of Corrections Roger Werholtz states as follows:

> I am the Secretary of Corrections of the Kansas Department of Corrections, State of Kansas, and became so employed on or about January 13, 2003. I have previously served as Acting Secretary of Corrections and Deputy Secretary of Corrections prior to being appointed as the Secretary.
>
> I did not have any direct involvement with the matter now raised by the plaintiff Steven Thomas and have directly done nothing regarding Mr. Thomas or the conditions of his incarceration. I do note that William L. Cummings, my designee for purposes of responding to grievances, did respond to the grievance number BA00011857 on July 22, 2004, on my behalf.
>
> Any actions I took or did not take were performed within the scope of the duties of my position of employment with the State of Kansas and not in any personal or non-business capacity.

Defendant Dennis Goff is a registered nurse practitioner, employed at the Hutchinson Correctional Facility and states as follows:

> My name is Dennis Goff and I am employed by Correct Care Solutions, Inc. (CCS), as a Registered Nurse Practitioner assigned to provide health care services to inmates housed at the Hutchinson Correctional Facility in Hutchinson, Kansas. I was employed by CCS on May 12, 2003, and have remained so employed through this date.
>
> Plaintiff is an inmate who was housed at the central unit of the Hutchinson Correctional Facility (HCF) from May 12, 2003, until he was transferred to the Ellsworth Correctional Facility on December 14, 2004.
>
> Although I am responsible for attending to the medical needs for many of the 1900 or so inmates housed at HCF, I do remember Mr. Thomas. He had a variety

of medical issues, one relating to his liver and the fact that he tested positive for the Hepatitis C virus.

As I recall, Mr. Thomas was initially diagnosed with Hepatitis C when he returned to the custody of the secretary of corrections on or about March 24, 2003, as he completed the reception and diagnostic process at the Reception and Diagnostic Unit located at the El Dorado Correctional Facility.

Plaintiff's petition indicates that I saw him October 29, 2004, and referred him, subject to approval by the health services administrator, for further diagnostic and lab work, based on his test results, which is incorrect as the health services administrator does not make that decision. Some care procedures have to be reviewed and approved by a committee before they can be authorized. I do not remember if that was the case with Mr. Thomas.

Because a number of months has passed and I have seen many inmate patients in that time, I would defer to the medical record of treatment petitioner has received for the accurate description of the course of treatment accorded plaintiff.

The treatment plaintiff received for his liver problems was in line with treatment that was necessary and appropriate for this circumstance and he was not refused any treatment as he should have received. I was not deliberately or otherwise indifferent to the serious medical needs of the plaintiff.

Defendant Janet Myers is a registered nurse, employed at the Hutchinson Correctional Facility and states as follows:

My name is Janet Myers and I am employed by Correct Care Solutions, Inc. (CCS), as an administrator assigned to oversee health care services provided to inmates housed at the Hutchinson Correctional Facility in Hutchinson, Kansas. I was so employed on May 12, 2003, through this date.

Plaintiff is an inmate who was housed at the central unit of the Hutchinson Correctional Facility (HCF) from May 12, 2003, until he was transferred to the Ellsworth Correctional Facility on December 14, 2004.

I have never seen Plaintiff for purposes of medical treatment. Although I am licensed as a registered nurse, I am employed as the administrator at the HCF site and not as a care provider nor a decision maker regarding medical care of inmates.

I have reviewed the response to grievance BA00011857 given to plaintiff by Director of Nursing Debra Lundry, RN, on June 10, 2004, and I have also

> conducted a cursory review of plaintiff's extensive medical record. The response regarding treatment of plaintiff for Hepatitis C by monitoring lab results and the finding that both medications and a liver biopsy were both unnecessary at that time seem to be correct at that time it was written. It appears, following the appropriate protocols and testing, that a liver biopsy was performed on plaintiff December 7, 2004, at the Wesley Medical Center in Wichita, Kansas.
>
> In further reviewing plaintiff's records I see that he received two vaccinations against Hepatitis A on July 16, 2004, and on January 31, 2005.
>
> I also note that plaintiff is presently scheduled to first transfer to the Lansing Correctional Facility for possible eye surgery for glaucoma, then to return to the Hutchinson Correctional Facility for drug treatment. Once plaintiff has completed treatment he will be able to begin treatment for Hepatitis C. The above plan has been reviewed with plaintiff and approved by Dr. Norris.
>
> There are procedures which sometimes need to be followed to obtain corporate approval for such treatment, depending on the specific treatment sought by a physician. In such cases, requests for non-routine medications and treatments would be submitted to the corporate medical director for approval. A request for a liver biopsy from plaintiff, or a request from plaintiff for a given regimen of medications must be reviewed and approved in the same fashion.
>
> The treatment plaintiff received for his Hepatitis C appeared to be in line with treatment that was necessary and appropriate for his illness and he was not refused any treatment as he should have received. I was not deliberately or otherwise indifferent to the serious medical needs of the plaintiff. I do not recall having any direct contact with plaintiff either in regard to his actual treatment for [H]epatitis C or in regard to any complaint about the treatment accorded his illness, although I do remember talking with him about treatment for his liver disease.

**III. ANALYSIS**

Plaintiff alleges that defendants' deliberate indifference to his medical needs violates his Eighth Amendment right to be free from cruel and unusual punishment.

"A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment." Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005). To establish this type of Eighth Amendment claim,

an inmate must show that: 1) his medical needs were serious; and 2) prison officials were deliberately indifferent to those needs. Riddle v. Mondragon, 83 F.3d 1197, 1203 (10th Cir. 1996). Additionally, in situations where treatment was delayed rather than denied altogether, this Circuit requires that the inmate suffer "substantial harm" as a result of the delay. Garrett v. Stratman, 254 F.3d 946, 950 (10th Cir. 2001). An Eighth Amendment violation may be established whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care...." Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (footnote omitted).

The deliberate indifference standard includes both an objective and subjective component. Martinez v. Garden, 430 F.3d 1302, 1304 (10th Cir. 2005). In the objective analysis, a prisoner must show from objective facts that he or she is "incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In the context of medical care, the inmate must show the presence of a "serious medical need," that is, "a serious illness or injury." Estelle, 429 U.S. at 104, 105, 97 S.Ct. 285. A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980)." Hunt v. Uphoff, 199 F.3d at 1224. "The objective component is met if the deprivation is 'sufficiently serious.' " Martinez, 430 F.3d at 1304 (quoting Farmer, 511 U.S. at 834, 114 S.Ct. 1970 (quotation omitted)).

In the subjective analysis, the plaintiff must prove that the defendant had a culpable state

of mind known as "deliberate indifference." Farmer, 511 U.S. at 834, 114 S.Ct. 1970. The deliberate indifference standard is a middle ground that rests "somewhere between the poles of negligence at one end and purpose or knowledge at the other." Id. at 836, 114 S.Ct. 1970. The Farmer court likened this standard to criminal recklessness, which makes a person liable when he or she "consciously disregard[s] a substantial risk of serious harm." Id. at 837-38, 114 S.Ct. 1970. "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." Martinez, 430 F.3d at 1304 (quotation omitted).

Plaintiff's complaint alleges defendants were deliberately indifferent to his constitutional rights under the Eighth Amendment when they failed to treat his Hepatitis C. Plaintiff alleges that the medical record establishes that his enzyme levels were abnormally high on March 25, 2003, August 22, 2003, January 29, 2004, and October 20, 2004. He also alleges that he did not receive a liver biopsy. The record provides a different picture of plaintiff's claims. The medical record indicates that defendants were continuously aware of and monitoring plaintiff's condition. In March 2003, plaintiff's goal was established to avoid liver toxins. On August 22, 2003 and January 29, 2004, plaintiff had additional lab work done. On October 20, 2004, plaintiff requested and received records as to his enzyme levels. After this, the record indicates that doctor and patient agreed they would "work up the process" on plaintiff regarding his hepatitis. In the following months, additional tests were conducted. By mid-November 2004, it was recommended that plaintiff receive a liver biopsy. On December 7, 2004, the liver biopsy was performed. In his motion to amend his complaint, plaintiff acknowledges he received the biopsy in December 2004.

Under these circumstances, the court finds that plaintiff fails to establish an Eighth

Amendment claim. Defendants clearly acknowledge that plaintiff had a serious condition that was continuously monitored through clinic visits and lab tests. Plaintiff fails to establish that defendants were deliberately indifferent under both an objective and subjective analysis. First, there is no evidence of a deprivation that was sufficiently serious to meet the objective component. The care providers recognized plaintiff's condition and provided ongoing monitoring. Second, there is no evidence of defendants knowingly disregarding risk to plaintiff's health. When plaintiff's high enzyme levels warranted further testing and a liver biopsy, defendants undertook steps to ensure treatment through the established administrative process. Plaintiff fails to contradict these facts. The record indicates that plaintiff's reluctance to participate in a drug treatment program may have been partially responsible for his treatment delays.

IT IS ACCORDINGLY ORDERED this 25th day of April 2006, that the court grants defendants' Motion for Summary Judgment (Dkt. No. 82).

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE